# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL BERENATO, SR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 15-4325** |
| | : | |
| **SENECA SPECIALITY INSURANCE** | : | |
| **COMPANY,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                    **March 1, 2017**

This case, which is before the Court on the Motions for Summary Judgment of Defendants Seneca Specialty Insurance Co., Gallagher Bollinger, and All Risks, Ltd., presents a thicket of tort, contract, and insurance issues: Plaintiff's vacant warehouse burned in a fire after he turned off its sprinkler system, and he now seeks to recover for that loss through an insurance policy that was not sent to him. Defendants respond that the unambiguous language of the policy bars coverage, and that Plaintiff is responsible for the loss because he disabled the sprinkler system. As explained below, Defendants' motions will be granted.

## I.    BACKGROUND

The material facts are undisputed. Plaintiff Paul Berenato, Sr., owned a vacant building in Philadelphia for which he needed insurance.[1] He began shopping for a policy in late 2014, and purchased one from Seneca in early 2015.[2] The policy contained a "protective safeguards endorsement" stating that as a condition of his coverage, Mr. Berenato was required to maintain certain "protective devices or services" on the property, including an "automatic sprinkler

---

[1] Doc. No. 26 (Seneca's Motion for Summary Judgment) at 1.

[2] *Id.*

system."[3]  The policy also stated:

> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
>
> 1.  Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
>
> 2.  Failed to maintain any protective safeguard . . . over which you had control in complete working order.
>
> If part of an Automatic Sprinkler System . . . is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore the full protection within 48 hours.[4]

The property's sprinkler system suffered leaks on at least three occasions between January and March 2015.[5]  While the system was successfully repaired after the first two incidents, Mr. Berenato decided to turn it off after the third, reasoning that the leaks were caused by cold weather and that the system could be turned on again once the temperature rose.[6]  No one notified Seneca of the shutdown, which occurred between February 20 and early March 2015.[7]  On March 28, 2015, while the system was inactive, the property was damaged in a fire.[8]  Seneca refused to cover the loss on the ground that Plaintiff had violated the protective safeguards endorsement by disabling the sprinkler system.[9]

This case also involves Bollinger and All Risks, both of which assisted Plaintiff in

---

[3] *Id.* at 1, 5-6.

[4] *Id.* at 6; *see also* Doc. No. 27-2 (Ex. M to Bollinger's Motion for Summary Judgment) (Seneca Policy) at 8-9 (ECF pagination unless otherwise noted).

[5] *Id.* at 2-3; Doc. No. 32 (Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Summary Judgment Motions) at 7-10.

[6] Doc. No. 26 at 2; Doc. No. 32 at 2, 7, 9-10.

[7] Doc. No. 26 at 2; Doc. No. 27 (Bollinger's Motion for Summary Judgment) at 5; Doc. No. 28 (All Risks' Motion for Summary Judgment) at 6-7; Doc. No. 32 at 10-11.

[8] Doc. No. 26 at 3; Doc. No. 32 at 12.

[9] Doc. No. 32 at 14; *see also* Doc. No 27-3 (Ex. N. to Bollinger's Motion for Summary Judgment) (June 12, 2015 Ltr. from Seneca to Plaintiff) at 3-4.

procuring insurance from Seneca.  Bollinger acted as Plaintiff's broker.[10]  Because Bollinger was unable to obtain insurance from a carrier licensed in Pennsylvania, it turned to "surplus lines" insurers, which are not licensed in Pennsylvania but may conduct business through a "surplus lines licensee," which is allowed to do business in the state.[11]  Here, All Risks acted as the surplus lines licensee, and identified an insurance policy from Seneca, which Plaintiff ultimately purchased through Bollinger.[12]

All parties were under the impression that Plaintiff had a working sprinkler system when he applied for insurance.  When Plaintiff completed an insurance application with Matthew Jakubowski, a Bollinger employee, he informed Mr. Jakubowski that there was a "wet sprinkler system throughout the building."[13]  The insurance proposal that Bollinger obtained from Seneca (through All Risks) outlined the scope of coverage and the relevant exclusions, including the protective safeguards endorsement and its automatic sprinkler system requirement.[14]  Plaintiff admits he accepted that proposal.[15]

Seneca then issued the policy, but Plaintiff never received it due to a transmission error.[16] Seneca sent the policy to All Risks on February 3, 2015, and All Risks attempted to forward the policy to Bollinger, but All Risks sent the policy to a defunct email address, so neither Bollinger

---

[10] Doc. No. 32 at 5.

[11] *Id.* at 5; Doc. No. 26 at 3.  Plaintiff questions Bollinger's efforts to obtain insurance from an admitted carrier before turning to the surplus lines market, Doc. No. 32 at 5, but that is immaterial for summary judgment purposes, as the parties agree that Plaintiff ultimately obtained surplus lines insurance from Seneca.

[12] Doc. No. 32 at 6-7; Doc. No. 28 at 3.

[13] Doc. No. 27 at 3; Doc. No. 27-1 (Ex. C to Bollinger's Motion for Summary Judgment) (Oct. 28, 2014 email) at 75; Doc. No. 32 at 6 ("As part of their discussions, Mr. Berenato advised Mr. Jakubowski that there was a wet sprinkler system throughout the building.").

[14] Doc. No. 26 at 4; Doc. No. 27 at 5-6; Doc. No. 27-1 (Ex. E to Bollinger's Motion for Summary Judgment) (Seneca Quote) at 91; Doc. No. 28 at 3.

[15] Doc. No. 27-1 (Ex. A to Bollinger's Motion for Summary Judgment) (Complaint) ¶¶ 8-9.

[16] Doc. No. 32 at 7-9; *see also* Doc. No. 26 at 1, 4.

nor Plaintiff received it.[17]  No one realized this until after the fire, at which point Plaintiff sought to recover under the policy.[18]

After Seneca denied coverage, Plaintiff commenced suit in state court, asserting a claim for breach of contract against Seneca, claims for breach of contract and negligence against Bollinger, and a claim for negligence against All Risks.  Bollinger then removed the case to this Court on the basis of diversity jurisdiction.[19]  Defendants now move for summary judgment on all claims against them.

## II.    LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[20]  A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]  A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[22]  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[23]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[24]

---

[17] Doc. No. 26 at 1; Doc. No. 27 at 5; Doc. No. 28 at 7; Doc. No. 32 at 7-9.

[18] Doc. No. 32 at 12.

[19] Doc. No. 1 (Notice of Removal).

[20] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[21] Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Id.*

[24] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Further, "a court may not weigh the evidence or make credibility determinations."[25]
Nevertheless, the party opposing summary judgment must support each essential element of the
opposition with concrete evidence in the record.[26]  "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted."[27]  Therefore, if, after making all
reasonable inferences in favor of the non-moving party, the court determines that there is no
genuine dispute as to any material fact, summary judgment is appropriate.[28]  "In a diversity case,
when faced with a motion for summary judgment, the federal courts follow federal law on issues
of procedure but apply the substantive rule of decision from state law," which the parties here
agree is Pennsylvania law.[29]

## III.   DISCUSSION

### A.  Seneca's Motion

Seneca moves for summary judgment on Plaintiff's breach-of-contract claim, arguing
that the protective safeguards endorsement bars coverage.  Plaintiff responds that the protective
safeguards endorsement is ambiguous, and that Seneca cannot invoke it because Plaintiff never
received the policy.

### 1.  The Protective Safeguards Endorsement Is Unambiguous

Seneca argues that the protective safeguards endorsement is unambiguous because it
states that Seneca "will not pay for loss or damage caused by or resulting from fire" in the event
that Plaintiff "failed to maintain any protective safeguard . . . over which [he] had control in

---

[25] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[27] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[28] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[29] *Peterman v. Sakalauskas*, 978 F. Supp. 2d 439, 443 (E.D. Pa. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

complete working order," and that Plaintiff violated this requirement when he turned off the

sprinkler system.[30]  The Court agrees.

"Under Pennsylvania law, the interpretation of an insurance contract is a matter of law

for the court,"[31] and "[a] court must give effect to unambiguous language in an insurance

contract."[32]  "Ambiguous language in an insurance contract must be construed against the

insurer."[33]  "However, the Third Circuit Court of Appeals and the Pennsylvania Supreme Court

have repeatedly warned courts against straining to find ambiguity in insurance contract

language."[34]  "Indeed, policy language should be read to avoid creating or finding ambiguity

wherever possible."[35]  Nonetheless, while Plaintiff "has the burden of demonstrating coverage

under an insurance policy," Seneca "has the burden of demonstrating the applicability of any

policy exclusions," such as the protective safeguards endorsement.[36]  "A court must construe

policy exclusions against the insurer, enforcing them only if plainly displayed and clearly

applicable."[37]

Here, the protective safeguards endorsement set an unambiguous baseline requirement

that Plaintiff keep his sprinkler system on.  To "maintain" a system in "complete working order"

necessarily means that the system is operational, not merely that it exists.  While reasonable

minds could perhaps differ about the scope of the "complete working order" requirement in the

---

[30] Doc. No. 26 at 9 (citing policy).

[31] *Lexington Ins. v. W. Penn. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)).

[32] *Fireman's Fund Ins. Co. v. Zurich Am. Ins. Co.*, Civil Action No. 10-cv-429, 2011 WL 2937421, at *3 (E.D. Pa. July 19, 2011) (citing *Lexington Ins.*, 423 F.3d at 323).

[33] *Id.* (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

[34] *Id.* (citations omitted).

[35] *Id.* (citations omitted).

[36] *Id.* (citations omitted).

[37] *Id.* (citations omitted).

abstract, there can be no doubt that it prevented Plaintiff from intentionally disabling the system, as he did here.  In other cases where a policyholder either did not have a working sprinkler system in place or turned off the system, courts have found that similar protective safeguards endorsements bar coverage, and the Court reaches the same conclusion here.[38]

Plaintiff's attempts to create ambiguity in this language are unavailing.  First, Plaintiff argues that the protective safeguards endorsement is ambiguous because it contains a provision to the effect that Plaintiff was not required to notify Seneca of a shutoff in the sprinkler system if he was able to "restore the full protection within 48 hours."[39]  However, that language only excuses Plaintiff from his obligation to notify Seneca of problems in the event that he could quickly restore "full protection," and does not override Plaintiff's obligation to maintain a sprinkler system in "complete working order."  In fact, the language anticipates a situation where the system malfunctions and is repaired promptly (within 48 hours).  But Plaintiff indisputably did *not* restore protection within 48 hours, as the system had been inactive for at least several days when the fire occurred, so to the extent this language is ambiguous, it does not aid Plaintiff.[40]

---

[38] *Yera, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 1398 EDA 2013, 2014 WL 10936714, at *3-4 (Pa. Super. Ct. Apr. 22, 2014) (finding identical protective safeguard endorsement unambiguous, and affirming grant of summary judgment for defendant where plaintiff's building did not have a sprinkler system); *see also Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*, 556 F. App'x 356, 359-360 (5th Cir. 2014) (affirming summary judgment for defendant in insurance case involving identical protective safeguards endorsement because it was undisputed that plaintiff's sprinkler system did not work on the day of the fire); *Chaucer Corp. Capital (No. 2) Ltd. v. Norman W. Paschall Co.*, 525 F. App'x 895, 896 (11th Cir. 2013) (holding that the "district court properly determined that coverage was barred by the exclusion that applies where [defendant] failed to maintain its automatic sprinkler system, over which it had control, in complete working order, because [defendant's] maintenance employee had turned off an entire system of the automatic sprinkler system"); *Great Lakes Reins. (UK), PLC v. JDCA, LLC*, No. 11-00001-WGY, 2014 WL 6633039, at *11 (D. Conn. Nov. 21, 2014) (concluding that protective safeguards endorsement requiring presence of an automatic sprinkler system was unambiguous and created a condition precedent to recovery under insurance policy); *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 157 Cal. Rptr. 3d 385, 398 (Cal. Ct. App. 2013) (concluding that similar protective safeguards endorsement required policyholder "to have a functioning, operational sprinkler system during the period of coverage").

[39] Doc. No. 32 at 18.

[40] In support of his position, Plaintiff cites an email chain from February and March 2015 in which Mr. Jakubowski informs him that an inspector sent by Seneca discovered leaks in the ceiling, and gave Mr. Berenato 60

Second, Plaintiff argues that the "maintain in complete working order" requirement is inapplicable because it extended only to safeguards over which he had "control," and the problems with his sprinkler system were caused by cold weather, which he could do nothing about. This interpretation is not supported by the word "control," which means "to exercise power or influence over."[41] Here, there is no dispute that Plaintiff exercised power over the sprinkler system, as he owned the property, had access to the system, and was able to shut it off at will—that the weather may have interfered with the *function* of the sprinkler system in no way diminishes plaintiff's "control" over it.[42] And even accepting Plaintiff's interpretation of "control," it is undisputed that Plaintiff had the sprinkler system repaired twice before he turned it off, meaning Plaintiff was able to "control" the system notwithstanding the weather. The protective safeguards endorsement therefore bars coverage.

### 2.  Seneca Is Not Barred from Asserting the Protective Safeguards Endorsement

Plaintiff next argues that Seneca cannot assert the protective safeguards endorsement because he never received the insurance policy. This argument fails because Seneca, as a surplus lines insurer, had no duty under Pennsylvania law to deliver the policy, and Plaintiff cannot establish that he had a reasonable expectation of coverage for fire-related losses in the absence of a working sprinkler system.

---

days to correct them. Plaintiff thus reasons that he should have been afforded a similar grace period regarding the defects in the sprinkler system. Doc. No. 32 at 18, Doc. No. 33-4 (Ex. N to Plaintiff's Opposition). But nothing in the emails suggests that Seneca agreed to modify the unambiguous language of the protective safeguards endorsement, so they are irrelevant on this point.

[41] *Control*, BLACK'S LAW DICTIONARY (9th ed. 2009).

[42] Plaintiff also apparently breached a separate requirement that he "maintain heat in the building . . . at a minimum of 55 degrees Fahrenheit," Doc. No. 26-2 (Seneca Policy) at 13, which could explain why the pipes kept freezing.

Seneca was not required to deliver the policy because Pennsylvania law places that duty on All Risks, the surplus lines licensee.[43]  Pennsylvania's surplus lines statute provides that "[u]pon placing surplus lines insurance, the surplus lines licensee shall deliver to the insured or the writing producer the contract of insurance."[44]  This is consistent with the statute's stated purpose of "[p]rotecting persons seeking insurance" by requiring non-admitted insurers such as Seneca to issue policies through regulated surplus lines licensees, rather than interacting directly with customers.[45]  As a result, surplus lines insurers are "not permitted to have direct contact with the insured," and must instead "rely upon intermediaries to deliver the policy to the insured."[46]  Thus, Seneca was only required to deliver the policy to All Risks, which it did.  It

---

[43] Plaintiff's expert, Jane M. Downey, opines in her "Supplemental Report" that Seneca breached an additional requirement under Pennsylvania's surplus lines statute that it issue a binder including a description of its insurance policy along with any material limitations, such as the sprinkler requirement.  Doc. No. 37-1 at 2.  However, this is irrelevant, as Ms. Downey acknowledges that Seneca did in fact issue a binder noting the existence of "Protective Safeguards, Sprinklers" in the policy, and does not opine that this shorthand description somehow misled Plaintiff into believing he could disable his sprinklers and still receive coverage for fire-related losses.

Ms. Downey's "Supplemental Report" is also untimely, as it was issued more than two months after the briefing for summary judgment concluded and nearly five months after the deadline for Plaintiff's expert reports.  *See* Doc. No. 24 (Scheduling Order).  While Plaintiff claims that the Supplemental Report was necessitated by "additional discovery" that took place after summary judgment briefing, this "additional discovery" appears to consist exclusively of Ms. Downey's own deposition testimony, which presumably was available to Plaintiff before that.  At no point during summary judgment briefing did Plaintiff request additional time for discovery, which is "usually fatal" to such late-breaking requests to supplement the record.  *See Pastore v. Bell Tel. Co. of Penn.*, 24 F.3d 508, 511 (3d Cir. 1994); *see also* Fed. R. Civ. P. 56(d) (when nonmovant cannot present facts essential to justify its opposition to summary judgment, a court may defer the motion or allow additional discovery); *Hartle v. FirstEnergy Generation Corp.*, 7. F. Supp. 3d 510, 517 (W.D. Pa. 2014) (explaining that while parties may supplement expert reports in certain circumstances, "[c]ourts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report.") (quoting Wright & Miller, Federal Practice & Procedure § 2049.1).  In any event, the rest of Ms. Downey's new report, which consists mostly of reiterating fact witness deposition testimony, has no bearing on the issues here.

[44] 40 P.S. § 991.1612(a).  Under the statute, the "writing producer" is "[t]he insurance producer which brings about or negotiates contracts of insurance directly on behalf of the consumer seeking insurance," which here is Bollinger, the broker.  40 P.S. § 991.1602.

[45] 40 P.S. § 991.1601; *see also Al's Cafe, Inc. v. Sanders Ins. Agency*, 820 A.2d 745 (Pa. Super. Ct. 2003) (discussing legislative purpose).

[46] *Tudor Ins. Co. v. Twp. of Stowe*, 697 A.2d 1010, 1018 (Pa. Super. Ct. 1997); *see also Nations First Mortg. LLC v. Tudor Ins. Co.*, No. 3:CV-05-2527, 2009 WL 3182967, at *9 (M.D. Pa. Sept. 30, 2009) (explaining that surplus lines insurers "must rely on" surplus lines licensees "to conduct business in Pennsylvania").

would be All Risks, rather than Seneca, which would bear the consequences of this failure, and its potential liability will be discussed in connection with its motion below.

Plaintiff also suggests that Seneca's failure to ensure that the policy was delivered caused his loss of coverage because if he had received the policy, "he would have sat down with Mr. Jakubowski to go over the requirements, and not allowed the system to remain off even for a limited period."[47] But the only evidence Plaintiff offers in support of this argument is his own declaration, which is not sufficient to ward off summary judgment.[48] That is particularly true because there is evidence that Plaintiff would *not* have read the policy, including his own deposition testimony that upon receiving an insurance policy, his standard practice was to "file it away" rather than going "through it page by page."[49]

Finally, Plaintiff argues that Seneca cannot invoke the protective safeguards endorsement because, having never received the policy, he had no reason to believe that a working sprinkler system was a precondition to coverage.[50] In support of this argument, Plaintiff invokes the "reasonable expectations" doctrine, which holds that "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured."[51] Thus, in certain cases, "even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage."[52] "However, this aspect of the

---

[47] Doc. No. 32 at 21.

[48] *E.g.*, *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment") (citations and internal quotation marks omitted).

[49] Doc. No. 27-1 (Ex. B to Bollinger's Motion for Summary Judgment) (Deposition of Paul Berenato, Sr.) at 36:21-38:6; *see generally Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").

[50] Doc. No. 32 at 20-21.

[51] *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997).

[52] *Id.*

doctrine is only applied in very limited circumstances to protect non-commercial insureds from policy terms not readily apparent and from insurer deception."[53]   "[A]bsent sufficient justification . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous."[54]

The reasonable expectations doctrine is inapplicable here because undisputed evidence shows Plaintiff was aware that he needed to maintain a working sprinkler system.  Plaintiff informed Mr. Jakubowksi when applying for insurance that his property had "100%" sprinkler coverage[55] and a "[w]et sprinkler system throughout the building."[56]   Seneca's quote also stated that the policy would be subject to a "protective safeguards endorsement" including an "automatic sprinkler system."[57]   And Plaintiff wrote to "Edward's Fire Protection" on February 18, 2015, that he "only ha[d] the sprinklers on because of insurance reasons."[58]   Indeed, Plaintiff's own liability expert opines that Plaintiff "*believed that he could not shut the sprinkler system down as the Seneca insurance policy required it*."[59]   Thus, there is no genuine factual dispute that Plaintiff was aware that he could not turn his sprinkler system off without risking a loss of insurance coverage.

There is also no evidence that Seneca led Plaintiff to believe that it would cover a fire-related loss in the absence of a working sprinkler system.  Plaintiff claims that because Seneca sent an inspector to his property, but did not advise him of the sprinkler system requirement

---

[53] *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 n.8 (Pa. 1999)).

[54] *Id.* (quoting *Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994)).

[55] Doc. No. 26-1 at 20 (Exhibits to Seneca's Motion for Summary Judgment).

[56] Doc. No. 27-1 (Ex. C to Bollinger's Motion for Summary Judgment) at 75.

[57] Doc. No. 27-1 (Ex. E to Bollinger's Motion for Summary Judgment) (Seneca Quote) at 91.

[58] Doc. No. 27-1 (Ex. H. to Bollinger's Motion for Summary Judgment) (Feb. 18, 2015 Ltr. from Plaintiff to Edward's Fire Protection) at 105 (emphasis added).

[59] Doc. No. 32-1 (Ex. D to Plaintiff's Opposition to Defendant's Summary Judgment Motions) at 83.

during the inspection, he had a reasonable expectation of coverage notwithstanding his deactivation of the system.[60]  Plaintiff's sole evidentiary support for this position is a January 12, 2015 report by "UIA Inspections" (allegedly Seneca's agent), which expressly states that the building was "equipped with a wet sprinkler system providing 100% coverage," so it is inconceivable that a reasonable factfinder would view this as evidence that Plaintiff believed he was *not* required to maintain a working sprinkler system.[61]  And to the extent that the inspection did lead Plaintiff to reach the dubious conclusion that he was free to turn off his sprinkler system, such an unreasonable expectation cannot control over the plain language of the policy.[62]

Because Plaintiff failed to maintain the sprinkler system in working order, as the Policy required, and Plaintiff had no reasonable expectation of coverage with the system shut off, summary judgment will be entered in favor of Seneca.

### B.  Bollinger's Motion

Bollinger, the broker, moves for summary judgment on Plaintiff's breach-of-contract and negligence claims.  Bollinger argues that both claims fail because Plaintiff has presented no evidence that any breach of contract or negligence by Bollinger caused his loss of insurance coverage.[63]  Bollinger also argues that Plaintiff's contract claim fails because Bollinger's only obligation was to help Plaintiff purchase insurance, which it did, and that Plaintiff's negligence claim is barred by Plaintiff's own negligence in disabling the sprinkler system.[64]

---

[60] Doc. No. 32 at 20-21.

[61] *Id.*

[62] *See Smith v. Cont'l Cas. Co.*, 347 F. App'x 812, 814 n.1 (3d Cir. 2009) (affirming grant of summary judgment in insurance case, rejecting argument based on "reasonable expectations" doctrine, and noting that "unreasonable expectations will never control").

[63] Doc. No. 27 at 18-20.

[64] *Id.* at 14-18, 21-23.

### 1. Plaintiff's Breach-of-Contract Claim

Plaintiff claims that Bollinger breached an agreement by failing to ensure that he was properly represented when he purchased insurance.  A breach-of-contract claim requires:  "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."[65]  Here, there is no evidence of a written agreement between Plaintiff and Bollinger, or of any oral agreement defining Bollinger's duties.  Instead, Plaintiff alleges an implied-in-fact contract existed that obligated Bollinger to explain the terms of the policy to him, including the protective safeguards endorsement, and that Bollinger failed to do so.

Plaintiff's claim fails for two reasons.  First, there is no evidence that Bollinger agreed to do anything other than procure insurance for Plaintiff, which it did, satisfying any contractual obligations.  An implied-in-fact contract "arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts."[66]  Here, Plaintiff identifies no evidence that Bollinger impliedly agreed to engage in a fulsome representation that included explaining the terms of the Seneca policy in detail, and thus he cannot show that Bollinger breached an implied-in-fact contract.[67]

Second, there is no evidence that Bollinger's alleged breach caused Plaintiff's damages.  "In order to recover damages for a contractual breach, a plaintiff must also establish a causal

---

[65] *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

[66] *Bricklayers of W. Penn. Combined Funds, Inc. v. Scott's Dev. Co.*, 90 A.3d 682, 695 (Pa. 2014) (quoting *In re Montgomery's Estate*, 149 A. 705, 707 (Pa. 1930)).

[67] *See Loomis v. KEYW Corp.*, Civil Action No. 13-974, 2015 WL 2237046, at *4 (E.D. Pa. May 13, 2015) (granting defendant's summary judgment motion on insurance broker's implied-in-fact contract claim because there was "no evidence in the summary judgment record" that any such contract existed).

relationship between the breach and the loss."[68]  Causation is usually a question of fact left for

the jury.[69]  Here, however, Plaintiff has identified no evidence that Bollinger's failure to explain

the Seneca policy caused his loss, aside from his own statements at his deposition and in his

affidavit that he would have maintained the sprinkler system if Bollinger had told him to do so.[70]

As discussed, the undisputed evidence shows that Plaintiff was aware that he needed to keep his

sprinkler system on for insurance purposes and turned it off regardless.  Against this, Plaintiff's

self-serving assertion that he would have kept the sprinklers on if Bollinger had been more vocal

about the requirement is not sufficient to create a genuine factual dispute as to causation.[71]

### 2. Plaintiff's Negligence Claim

Plaintiff also alleges that Bollinger was negligent because it failed to explain the policy or

ensure that it was delivered to Plaintiff.[72]  Under Pennsylvania law, "[a] plaintiff acquires a

cause of action against his broker or agent where the broker neglects to procure insurance, or

does not follow instructions, or if the policy is void or materially defective through the agent's

fault."[73]  Similar to a traditional negligence claim, insurance brokers face liability if "they fail to

exercise the care that a reasonably prudent businessman in the brokerage field would exercise

---

[68] *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 459 (W.D. Pa. 2015) (quoting *Brader v. Allegheny General Hosp.*, 64 F.3d 869, 878 (3d Cir. 1995)).

[69] *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 388-89 (E.D. Pa. 2013).  While rare, cases do exist in which courts have granted summary judgment on breach-of-contract claims after finding that the plaintiff could not establish causation as a matter of law.  *E.g.*, *Community Preschool & Nursery of E. Lib., LLC v. Tri-State Realty, Inc.*, 430 F. App'x 125, 128 (3d Cir. 2011) (affirming grant of summary judgment on breach-of-contract claim because there was "no genuine issue of material fact as to causation").

[70] Doc. No. 32 at 23-24.

[71] *Gonzalez*, 678 F.3d at 263 (non-movant's "own, sworn statements are insufficient to survive summary judgment"); *McBride v. Am. Substance Abuse Prof'ls., Inc.*, 917 F. Supp. 2d 419, 426 (E.D. Pa. 2013) (explaining that "[t]o determine whether a nonmoving party's deposition testimony alone is insufficient to withstand summary judgment, the assertions must be compared to the other evidence of record to determine whether they are sufficient" to create a genuine factual dispute, and holding that plaintiff's deposition testimony was not enough to establish negligence claim).

[72] Doc. No. 32 at 23.

[73] *Laventhol & Horwath v. Dependable Ins. Assocs.*, 579 A.2d 388, 391 (Pa. Super. Ct. 1990).

under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer."[74]

Plaintiff's negligence claim fails for the same reason as his breach-of-contract claim: there is no evidence that Plaintiff would have maintained a working sprinkler system if Bollinger had acted differently, meaning Plaintiff cannot show that Bollinger's alleged negligence was either the but-for or proximate cause of his loss.[75]  Causation in negligence cases is typically left to the jury, but summary judgment is warranted where, as here, the plaintiff cannot proffer evidence sufficient to justify an inference of causation.[76]

Plaintiff's claim also fails because Plaintiff's contributory negligence bars recovery. Under Pennsylvania law, an insurance broker cannot be held liable for a customer's loss caused

---

[74] *Al's Cafe*, 820 A.3d at 750 (citations and internal quotation marks omitted).

[75] *See Harmelin v. Man Fin. Inc.*, Civil Action No. 06-1944, 2007 WL 3146666, at *3 (E.D. Pa. Oct. 26, 2007) ("There are two kinds of causation, 'but for' causation and proximate cause, both of which are generally necessary to establish legal causation.").

While the Court assumes for the purposes of this opinion that Plaintiff can establish the other elements of a negligence claim, it is debatable whether Bollinger owed Plaintiff a duty to explain the protective safeguards endorsement in detail, as Plaintiff alleges.  Plaintiff's primary evidence in support of the existence of such a duty is Ms. Downey's opinion regarding the customs and practices of the insurance industry, *see* Doc. No. 32-1 (Ex. D to Plaintiff's Opposition to Defendant's Summary Judgment Motions), but case law suggests that an insurance broker's duty to his or her clients is more circumscribed.  *See Allegrino v. Conway E & S, Inc.*, Civil Action No. 09-1507, 2010 WL 3943939, at *8 (W.D. Pa. Oct. 6, 2010) ("In the context of an insurance transaction, the insured is presumed to know what type of coverage he/it needs or wants, and an insurance broker is not under an affirmative duty to inspect a property and recommend insurance to a client, or to advise a client regarding the extent of coverage.") (citations omitted); *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 581 (Pa. Super. Ct. 2006) (holding that insurance broker did not owe clients a duty to inform them that their policy lacked flood insurance even though an inspection of the property would have revealed that it was at risk of flooding).

[76] *See generally Bushman v. Halm*, 798 F.2d 651, 657 (3d Cir. 1986) ("Where there can be no two factual conclusions, or where there is some applicable rule of law decisive of the issue, it is the function of the court to determine whether a defendant's conduct is the legal cause of plaintiff's harm."); *see also Galullo v. Fed. Express Corp.*, 937 F. Supp. 392, 399 (E.D. Pa. 1996) (in negligence suit where plaintiff alleged that she slipped on a package left by defendant, granting summary judgment for defendant because plaintiff "presented no evidence tending to prove what caused her fall"); *Amarhanov v. Fassel*, 658 A.2d 808, 810 (Pa. Super. Ct. 1995) (in negligence suit where plaintiff suffered injuries while rummaging through a dumpster when it was struck by a car, summary judgment was warranted for defendants who owned the premises because there was no evidence that the placement of the dumpster caused plaintiff's injuries); *Askew v. Zeller*, 521 A.2d 459, 463 (Pa. Super. Ct. 1987) (in negligence suit where plaintiff-motorcyclist was struck by car, affirming grant of summary judgment for defendant who allegedly made hand signal that caused motorcyclist to turn into oncoming traffic because there was no evidence hand signal caused collision).

by his negligence where "the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss."[77]   In an action "to recover damages for negligence resulting in death or injury to person or property," Pennsylvania's Comparative Negligence Act would apply and ameliorate this rule, but because Plaintiff alleges a monetary loss from a lack of insurance coverage, the Court "must revert to the doctrine of contributory negligence which provides that the plaintiff is barred from recovery if his negligence contributed to the result."[78]

Bollinger argues that Plaintiff was negligent for turning off the sprinkler system.[79]   The Court agrees.  By disabling the sprinkler system in his vacant building, Plaintiff disregarded the obvious risk that a fire would occur and Seneca would not cover any resulting damages. Plaintiff's failure to exercise reasonable care in protecting his property renders him contributorily negligent as a matter of law and bars recovery against Bollinger.[80]

Plaintiff responds that he was not aware that his insurance policy required him to maintain a working sprinkler system, but as already explained, the uncontroverted evidence

---

[77] *Consol. Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3d Cir. 1968); *see also Indus. Valley Bank & Tr. Co. v. Dilks Agency*, 751 F.2d 637, 641 (3d Cir. 1985) (insured's failure to exercise reasonable care barred negligence action against broker).

[78] *Westcoat v. Nw. Savings Ass'n*, 548 A.2d 619, 623 (Pa. Super. Ct. 1988); *see also Acands, Inc. v. Aon Risk Servs.*, Civil Action No. 01-3277, 2004 WL 2601035, at *4 (E.D. Pa. Nov. 10, 2004) (applying contributory negligence doctrine in insurance case).  Of course, this action involves an "injury to property" in the sense that it arises out of a fire in Plaintiff's building, but that does not bring it within the scope of the Comparative Negligence Act because Plaintiff does not allege that Bollinger (or All Risks) *caused* the fire, but rather that they caused him to suffer financial losses due to a lack of insurance coverage.  *See Rizzo v. Michener*, 584 A.2d 973, 976 (Pa. Super. Ct. 1990) (explaining that for the Comparative Negligence Act to apply, the action must concern "a tortious episode which causes damage to tangible real or personal property," and holding that contributory negligence governed plaintiffs' claim that defendant negligently failed to discover termite damage on plaintiffs' property because defendant's negligence did not cause the damage).  In any event, although Plaintiff does not concede that contributory negligence governs here, Doc. No. 32 at 25, he also does not present any argument as to why the Comparative Negligence Act applies, and the Court will apply the doctrine of contributory negligence.

[79] Doc. No. 27 at 23.

[80] *See Consol. Sun Ray, Inc.*, 401 F.3d at 656.

establishes that Plaintiff knew of this requirement despite not receiving the policy.[81]  And even if Plaintiff were not aware of the requirement, he was negligent nonetheless as his decision to shut off a fire protection system created a foreseeable risk of fire-related damage.[82]

Plaintiff also argues that contributory negligence is an issue for the jury.  While that is often true, decisions that predate the Comparative Negligence Act demonstrate that summary judgment is appropriate in cases such as this where there is no genuine factual dispute regarding the plaintiff's negligence.[83]  Here, as in those cases, Plaintiff's decision to ignore "the dictates of elementary caution bars his recovery."[84]

### C.  All Risks' Motion

All Risks moves for summary judgment on Plaintiff's claim that All Risks was negligent in failing to deliver the insurance policy to Plaintiff.[85]  All Risks raises similar arguments to Bollinger—that Plaintiff cannot establish the elements of a negligence claim, and that Plaintiff's contributory negligence bars coverage—and its motion is granted for the same reasons.[86]  Although All Risks did not deliver the policy to Bollinger or Plaintiff, Plaintiff cannot show that any negligence by All Risks caused Plaintiff's loss.  And as explained, Plaintiff's own

---

[81] Doc. No. 32 at 25.

[82] *See generally Monahan v. Toro Co.*, 856 F. Supp. 955, 965 (E.D. Pa. 1994) ("The test of negligence is whether the wrongdoer could have foreseen the likelihood of harm to the plaintiff resulting from defendant's conduct.") (citation omitted); *see also Scottsdale Ins. Co. v. Weiner*, Civil No. 03-3857 (JBS/JS), 2010 WL 445649, at *1, 7 (D.N.J. Feb. 1, 2010) (under New Jersey law, finding defendants negligent and liable for fire that destroyed "Dracula's Castle," a tourist attraction, after they disabled the Castle's smoke alarms and sprinkler systems).

[83] *E.g.*, *Slater v. Erie Lackawanna Ry. Co.*, 300 F. Supp. 1, 4 (W.D. Pa. 1968) (granting summary judgment for defendant based on plaintiff's contributory negligence where undisputed evidence showed that plaintiff stopped her car at a railroad crossing and failed to move before being hit by a train); *Kronk v. W. Penn Power Co.*, 222 A.2d 720, 722 (Pa. 1966) (affirming judgment of nonsuit on contributory negligence grounds where plaintiff raised the mast of his drilling rig into power lines in broad daylight) (plurality opinion); *Just v. Son's of Italy Hall*, 368 A.2d 308, 310 (Pa. Super. Ct. 1976) (affirming grant of summary judgment for defendant based on plaintiff's contributory negligence where plaintiff fell while attempting to walk down a staircase in total darkness).

[84] *Sipko v. Penn R. Co.*, 2 A.2d 717, 718 (Pa. 1938).

[85] Doc. No. 28.

[86] *Id.* at 18-33.

contributory negligence precludes him from recovering in tort against All Risks.  Summary judgment will therefore be entered in favor of All Risks.

**IV.     CONCLUSION**

For the reasons stated above, Defendants' motions will be granted.  An appropriate Order will be entered.